[Civ. No. 5181.   Fourth Dist.   Jan. 6, 1956.]

WILLIAM J. CAMERON et al., Appellants, v. CITY OF ESCONDIDO et al., Respondents.

W. E. Starke for Appellants.

Russell G. Taliaferro for Respondents.

GRIFFIN, J.—Respondents, city of Escondido, the city council, and the mayor thereof, proceeding under the Improvement Act of 1911 (Stats. 1911, chap. 397, p. 730) and Streets and Highways Code, section 5240 et seq., advertised for bids for construction of certain sewer work in that city. The bid proposal stated, among other things, that pursuant to section 5242 of the Streets and Highways Code, said bid should be accompanied by "a certified check payable to the city" or a bond in the amount of 10 per cent of the aggregate of the proposal, and that bids would be opened at 7:30 p.m. on August 3, 1955. At that time five bids were opened and it was shown

that respondent Corzine and Turnor's (contractors) bid was the lowest, and that it was accompanied by a personal check in the sum of 10 per cent of their bid rather than a certified check. The petitioners here were next lowest bidders and accompanied their bid by a proper bond. Immediately after the opening of the bids, as was the custom, the city council ordered that all bids and security furnished therewith be referred to the engineer of work for examination and report on August 10, 1955 "on the bidding and the lowest responsible bidder." On August 4, respondent contractors deposited with the city clerk their certified check in the proper amount to accompany their bid, and on August 10th, the city council, at a regular meeting, by resolution made a finding that the certified check was on deposit with the city clerk; that it was in the proper amount; and that the city council, on behalf of the city, waived the informality in said bid. Thereafter the engineer of work recommended that respondent contractors' bid be accepted and by resolution that bid was accepted and all others were rejected. On August 31, 1955, respondents, under separate bond, entered into a contract with the city for, and thereafter actually commenced, construction of the sewer work. All checks and securities which were received with the bids were returned to the respective bidders. On August 22, 1955, petitioners obtained an alternative writ of mandate and on September 7, 1955, after hearing in the superior court, the writ was denied and the alternative writ discharged. The prayer of the petition was that the city council "rescind this resolution of award of contract . . . wherein it was determined that the contract should be awarded to the defendants E. L. Corzine and E. L. Turnor"; and to command the city to "receive and accept the bid of petitioners as being the lowest and best responsible bid, and to award them the contract as bid."

It is the position of petitioners that (1) they were the lowest *regular* bidders, that they were entitled to have their bid considered and accepted as the lowest regular bid, and that as a result the contract should have been awarded to them; (2) that under section 5244 of the Streets and Highways Code the city council had three alternatives, namely (a) reject any and all proposals and bids; (b) reject the bid of any party who has been delinquent or unfaithful in any former contract with the city; and (c) reject all proposals or bids other than the lowest regular proposal or bid of any responsible bidder; that inasmuch as respondent councilmen failed to exercise their prerogatives under the first alternative (a) and made no find-

ing under the second alternative (b) that their third alternative was mandatory and that the contract should have been awarded to petitioners as being the lowest regular bid or proposal; and that by failing to exercise their first two alternatives, the awarding of the contract to petitioners became a vested right and enforceable by mandamus. It is further contended that by permitting the respondent contractors to make good a bid on August 4th, 1955, when they had no regular bid on file on August 3d, the city was unfair to petitioners and its action was contrary to law.

It is a well-established rule of law that mandamus may be issued by any court to any board or person to compel the performance of an act which the law specifically enjoins as a duty resulting from an office. Section 1094.5, subdivision (e), Code of Civil Procedure provides that a judgment under a writ of mandate shall not limit or control in any way the discretion legally vested in the respondent. A writ of mandate may not issue to compel an officer or board to act in any particular way except in the performance of ministerial duties and never to control the exercise of discretion unless it has been abused. (*Morales* v. *Ingels,* 30 Cal.App.2d 182 [85 P.2d 907].)

In the instant case there is no showing that respondent city council was obligated by law or otherwise to award the bid to petitioners even though the bid of the respondent contractors was invalid, or if the award of the contract to them should be held to be unauthorized. (*City of Susanville* v. *Lee C. Hess Co.,* 45 Cal.2d 684, 696 [290 P.2d 520].) Under those circumstances the city council would still have the discretion to reject all bids for the several reasons indicated by section 5244 of the Streets and Highways Code. (*Charles L. Harney, Inc.* v. *Durkee,* 107 Cal.App.2d 570, 580 [237 P.2d 561, 31 A.L.R.2d 457].)

The only remaining questions are whether the action of the city council was unauthorized and invalid when it accepted respondent contractors' bid and had no jurisdiction to award the contract to them, and whether, in this respect, petitioners are entitled to the relief for which they prayed.

Apparently, this form of writ may be employed in inquiring into the subject matter now under discussion. (*Bodinson Mfg. Co.* v. *California Emp. Com.,* 17 Cal.2d 321, 328 [109 P.2d 935]; Code Civ. Proc. § 1094.5.)

Section 5242, *supra,* does provide that all bids *shall* be accompanied by a certified check for at least 10 per cent of the aggregate of the proposal. However, section 5243 provides

that no proposal or bid shall be considered unless "accompanied by the check or bond satisfactory to the legislative body."

A somewhat similar question was presented in *Greenwood* v. *Morrison*, 128 Cal. 350 [60 P. 971]. There, concerning an improvement under the Vrooman Act, the contractor had put up a bond which was $33 less than the required 10 per cent of his bid. The suit was by the holder of a street assessment lien against the property owner. The court said, at page 351:

"It is argued from this that all subsequent proceedings were vitiated, and that the assessment must fall. But the purpose of this preliminary bond was only to assure the board that the bidder would enter into the contract, if awarded to him, and to penalize him for his failure so to do. While it would be irregular for the city council to countenance a bond or certified check for an amount less than that required by the statute, the irregularity would not be jurisdictional. The preliminary bond has served its purpose when the contract has been awarded, and the subsequent undertaking conditioned upon the due performance of the work has been entered into. . . ."

In *Cady* v. *City of San Bernardino*, 153 Cal. 24 [94 P. 242], a taxpayer attempted to obtain judgment against the city, declaring that a certain contract for lighting, let after competitive bidding, was void. There a certified check, not less than 10 per cent of the bid, was required to accompany each bid. The lowest bidder accompanied his bid with a certified check for only $50, which was less than 10 per cent. The bid was $4.49 for each lamp required. The bidder, not knowing the exact number of lamps required, could not tell what amount should be named in the certified check. The court disposed of the question by holding that the object of the requirement of a 10 per cent check accompanying a bid is for the benefit of the city, to avoid possible loss in the event that the successful bidder should refuse to enter into the contract; and where the contract is entered into the purpose of the requirement is at an end. The taxpayer cannot, after the contract is let under a proper method, maintain a suit to avoid it, either on account of the method employed or for the insufficiency of the required check for 10 per cent of the bid, whatever objection he might have made for such insufficiency before the contract was let. (See McQuillin, Municipal Corporations, 3d ed., vol. 10, § 29.66, p. 333; *McCord* v. *Lauterbach*, 91 App.Div. 315 [86 N.Y.S. 503].)

■ There is authority for the statement that anyone may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement. (Civ Code, § 3513.) It should be here noted that the invitation for sealed bids (§ 7) recited that the city council reserved the right to reject any or all bids and to "waive any informality in the bids received." Whether this right of waiver is applicable to a city under the circumstances here related may be questioned. There can be no doubt that if it is applicable, the city council certainly waived that requirement as to the respondent contractors.

■ Notwithstanding the effect of this claimed waiver, we are convinced, from the authorities cited, that the presentation of the personal check in the sum of 10 per cent of the bid and the substitution of a certified check in said amount the following day, by consent of the city council, and before the bids were formally declared and accepted, was not a jurisdictional defect or invalidity about which petitioners can now complain, particularly where the contract has been let and the required undertaking has been given under it. The trial court was justified in holding that the facts related would not support such an order as was sought in the petition. (*City of Susanville* v. *Lee C. Hess Co., supra,* p. 720.)

Order affirmed.

Barnard, P. J., and Mussell, J., concurred.