530 So.2d 912 (1988)
DEPARTMENT OF TRANSPORTATION, Petitioner,
v.
GROVES-WATKINS CONSTRUCTORS, Respondent.
No. 71081.
Supreme Court of Florida.
August 18, 1988.
Rehearing Denied October 6, 1988.
Robert I. Scanlan, Appellate Atty. and Thomas H. Bateman, III, Gen. Counsel, Tallahassee, for petitioner.
Alan C. Sundberg, David S. Dee and F. Townsend Hawkes of Carlton, Fields, Ward, Emmanuel, Smith, Cutler & Kent, P.A., Tallahassee, for respondent.
Robert A. Ginsburg, Dade Co. Atty. and Deborah Bovarnick Mastin, Asst. Co. Atty., Miami, for Dade County, amicus curiae.
BARKETT, Justice.
We review Groves-Watkins Constructors v. Department of Transportation, 511 So.2d 323 (Fla. 1st DCA 1987), because of asserted conflict with our decision in Liberty County v. Baxter's Asphalt & Concrete, Inc., 421 So.2d 505 (Fla. 1982). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
The issue before us is whether the Department of Transportation ("DOT") lawfully rejected all bids submitted on a highway construction project as too high and properly directed that the project be rebid. We conclude that it did and quash the decision below.
Respondent, Groves-Watkins Constructors ("G-W"), submitted the lowest of three bids received by DOT for the construction of a complex highway interchange in Broward County. Although G-W submitted the lowest bid, it was still 29% higher than DOT's prebid estimate.[1] DOT notified G-W that it intended to reject its bid as too high and readvertise the project.
G-W filed a formal complaint and the matter was referred to a hearing officer pursuant to sections 120.53(5) and 120.57(1), Florida Statutes (1985).[2] Based upon the figures provided by G-W,[3] the hearing *913 officer determined that DOT's estimate was erroneous and G-W's cost estimate was correct. On that basis, the hearing officer concluded that G-W was entitled to the award of the contract. DOT declined to adopt the hearing officer's recommended order and denied the award.[4] DOT's Final Order disputed the hearing officer's conclusion that DOT's estimate was unreasonable and erroneous and gave four reasons for rejecting all bids: (1) the low bid exceeded the estimate by $12 million and thus was too high; (2) G-W failed to show it had the requisite federal concurrence in the award; (3) DOT sought increased competition; (4) the hearing officer's recommendation, by requiring DOT to compare the bids with a "corrected estimate," was contrary to existing DOT policy.
On appeal, the First District reversed, finding there was competent substantial evidence to support the hearing officer's findings and conclusions, and directed DOT to enter an order accepting G-W's bid. We quash the opinion below because the hearing officer and the First District applied an incorrect standard of review to DOT's action.
Although not required by common law, competitive bidding has been statutorily mandated for the protection of the public. In addition to providing a means by which goods or services required by public authorities may be acquired at the lowest possible cost, Hotel China & Glassware Co. v. Board of Public Instruction, 130 So.2d 78, 81 (Fla. 1st DCA 1961), the system of competitive bidding protects against collusion, favoritism, and fraud in the award of public contracts. Liberty County, 421 So.2d at 507; Wester v. Belote, 103 Fla. 976, 981-82, 138 So. 721, 723-24 (1931).
To provide needed flexibility, section 337.11(3), Florida Statutes (1985), gives DOT broad discretion to reject all bids on competitively bid construction projects:
The department may award the proposed work to the lowest responsible bidder, or it may reject all bids and proceed to readvertise the work or otherwise perform the work. (Emphasis added).
At the same time, the public bidding process is governed by the Florida Administrative Procedure Act ("APA"), chapter 120, Florida Statutes (1985), which provides a mechanism by which aggrieved parties may challenge agency decisions. Under section 120.57(1)(b)9 of the APA, an agency must accept the factual determinations of a hearing officer unless those findings are not based upon competent substantial evidence. Although these provisions may appear to be at odds, we believe they are harmonious.
Initially, we note the strong judicial deference accorded an agency's decision in competitive bidding situations:
[A] public body has wide discretion in soliciting and accepting bids for public improvements and its decision, when based on an honest exercise of this discretion, will not be overturned by a court even if it may appear erroneous and even if reasonable persons may disagree.
Liberty County, 421 So.2d at 507 (emphasis added). See also Culpepper v. Moore, 40 So.2d 366 (Fla. 1949); William A. Berbusse, Jr., Inc. v. North Broward Hospital Dist., 117 So.2d 550 (Fla. 2d DCA 1960).
In Liberty County, we recognized the broad discretion legislatively accorded public agencies and held that an agency's decision based upon an honest exercise of this discretion cannot be overturned absent a finding of "illegality, fraud, oppression or misconduct." 421 So.2d at 507. Liberty County thus established the standard by which an agency's decision on competitive bids for a public contract should be measured.
This standard conforms to the majority view that, where the agency is authorized to reject all bids, judicial intervention to prevent the rejection of a bid should occur only when the purpose or effect of the rejection is to defeat the object and integrity of competitive bidding. 10 E. McQuillin, Municipal Corporations § 29.77 (3d ed. 1981); Sea-Land Service, Inc. v. Brown, 600 F.2d 429 (3d Cir.1979) (only showing of clear illegality will entitle an aggrieved bidder to judicial relief); John J. Brennan *914 Const. Corp. v. City of Shelton, 187 Conn. 695, 448 A.2d 180 (1982) (judicial intervention in an agency's decision to reject all bids is limited to those few occasions where fraud or corruption has influenced the conduct of the officials); Law Brothers Contracting Corp. v. O'Shea, 79 A.D.2d 1075, 435 N.Y.S.2d 812 (1981) (decision to reject all bids because of budgetary, financial, and planning factors had rational basis and should not be disturbed); Weber v. Philadelphia, 437 Pa. 179, 262 A.2d 297 (1970) (if municipality, in connection with competitive bidding, is empowered to do so, it may reject any and all bids in the absence of fraud, collusion, bad faith or arbitrary action).
Under section 337.11(3), DOT is authorized either to award the contract to the lowest responsible bidder or reject all of the bids. If DOT rejects all bids, no statutory right exists in any bidder to have its bid accepted. See E. McQuillin, supra; Charles L. Harney, Inc. v. Durkee, 107 Cal. App.2d 570, 580, 237 P.2d 561, 567-68 (1951); Hotel China & Glassware Co., 130 So.2d at 81.
Thus, although the APA provides the procedural mechanism for challenging an agency's decision to award or reject all bids, the scope of the inquiry is limited to whether the purpose of competitive bidding has been subverted. In short, the hearing officer's sole responsibility is to ascertain whether the agency acted fraudulently, arbitrarily, illegally, or dishonestly.
The facts here do not justify such a finding. There was not the slightest evidence of fraud or collusion in the rejection of these bids. Nor was the rejection shown to be a means of avoiding competition. At most, the hearing officer found that DOT had made an honest mistake in its prebid estimate. Respondent presses upon us, however, that DOT's decision not to accept the hearing officer's "reconstructed" estimate and award the contract to G-W was arbitrary and capricious. We cannot agree.
Indeed, respondent concedes that had DOT rejected or deferred the project as "too costly" in light of the bids submitted, it would have been acting within its discretion. In our view, this is exactly what DOT did. We see no significant distinction between deferring the project as "too costly" and rejecting the low bid because it was "too high." Obviously, the anticipated cost of the project approximated the prebid estimate. When the bids revealed the large discrepancy between DOT's estimate and the amounts bid, DOT was entitled to regroup, reevaluate, redesign, or reject the project. Such a decision, absent bad faith, cannot be deemed arbitrary or capricious.
The procedure adopted by the hearing officer circumvented the very purpose of DOT's prebid estimate. As one court has noted, there are sound practical and public policy reasons for the preparation of prebid estimates by the agency involved. Durkee, 107 Cal. App.2d at 577, 237 P.2d at 565. In addition to providing a means by which the agency can decide whether adequate funds are available and the project desirable at the estimated cost, the estimate provides a yardstick by which to measure the accuracy and fairness of the bids. 107 Cal. App.2d at 577, 237 P.2d at 565-66. This purpose is totally thwarted when the agency's prebid estimate is replaced by the low bidder's after-the-fact estimate. As the court in Durkee noted:
When [the director] knows that a fair and accurate estimate has been prepared by the engineers of his staff before submitting the project to bids, he can then determine whether the bid is or is not fair in comparison with that estimate. But when he has no estimate at all, or has an estimate that is admittedly erroneous in major respects, or has an estimate that has been prepared after the bids have been submitted and after his engineers have consulted the work sheets of the bidder, the director has been deprived of the very yardstick given him by law and intended to protect him and the public.
107 Cal. App.2d at 577, 237 P.2d at 566.
In Durkee, the low bidder sought a writ of mandamus to compel the award of a highway construction contract after the highway department rejected all bids. As *915 in this case, the low bid substantially exceeded the prebid estimate and all bids therefore were rejected. As in this case, the estimate was determined to be in error. In Durkee, notwithstanding that his own engineers conceded their estimate was erroneous, the director of public works ordered a new estimate and rebid the project. In rejecting the low bidder's challenge, the California court found that the director had acted in accordance with his duty.
We likewise find that DOT did not abuse its discretion in rejecting all bids. Accordingly, we quash the decision of the district court and remand for proceedings consistent with this opinion.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, SHAW, GRIMES and KOGAN, JJ., concur.
NOTES
[1] DOT's policy is that it may reject all bids if the lowest bid is greater than 7% above DOT's official estimate of the cost of the project. The invitation to submit bids on this project informed the bidders of this policy.
[2] Section 120.53(5) establishes the procedure for resolving protests arising from the contract bidding process. Section 120.57 governs all proceedings in which the substantial interests of a party are determined by an agency.
[3] DOT's estimate was not introduced into evidence. DOT employees testified as to how the estimate was put together but did not explain the actual figures because of the confidentiality of the estimate. See § 337.168, Fla. Stat. (1985) (exempting the official cost estimate from inspection as a public record).
[4] The project was rebid and has since been awarded to another bidder.