602 So.2d 558 (1992)
ASPHALT PAVERS, INC., Appellant,
v.
STATE of Florida, DEPARTMENT OF TRANSPORTATION, Appellee.
No. 91-1913.
District Court of Appeal of Florida, First District.
April 30, 1992.
W. Crit Smith of Smith & Thompson, P.A., Tallahassee, for appellant.
Thornton J. Williams, General Counsel, and Gregory G. Costas, Asst. General Counsel, Dept. of Transp., Tallahassee, for appellee.
ZEHMER, Judge.
Asphalt Pavers, Inc. (Asphalt), having submitted the lowest bid on Department of Transportation State Project No. 09010-3518, appeals a final order dismissing its protest to the disqualification of its bid and the intended award of the project to the next lowest bidder. We hold that the hearing officer's findings of fact rejected by the Department of Transportation (DOT) are supported by competent, substantial evidence, reverse the final order, and remand for further proceedings.
In January 1991, DOT conducted a bid letting in Tallahassee to solicit bids from contractors for the subject road project. The bid specifications required, among other things, that each bid meet a disadvantaged business enterprise (DBE) goal of *559 10%. Each bid packet included a certification form to be signed by the bidder and submitted with the bid packet, stating that the bidder certifies and understands that it must show how the DBE goal is met. The form also states that failure to submit the DBE utilization forms reflecting full compliance with the contract goal, or in cases where forms do not reflect full compliance with the DBE goal, failure to submit sufficient documentation to demonstrate good faith efforts to meet the goal, will be just cause to consider the bid nonresponsive and to reject the bid. Section 2-5.3.2 of the Special Provisions required that the bid submission include a properly completed and executed Utilization Affirmative Action Certification, a Utilization Summary, and a Utilization Form.
Asphalt submitted its bid proposal in the amount of $2,402,747.90. At 11:00 a.m. on January 23, 1991, all bids were opened and reviewed by DOT's staff in DOT's auditorium in Tallahassee, and it was announced that Asphalt was the lowest bidder. DOT employees then collected the bid packets and took them to the Contracts Administration office to await the arrival of staff personnel from the Minority Programs Office who would check the packets for DBE compliance. When the staff arrived at 1:30 p.m. and began to check the packets, they discovered that the utilization form for one of the DBE subcontractors (H.S. Thompson) listed on Asphalt's summary sheet was missing. After Asphalt's bid proposal was reviewed by the Minority Programs Office and DOT's Good Faith Efforts Review Committee, it was recommended that the bid be considered nonresponsive because:
the DBE goal was not achieved[1] and no good faith efforts were presented with the bid for evaluation as required by Rule 14-78.003(2)(b)3c. The company attempted to meet the goal by using four (4) DBE companies. The DBE names were listed on the Summary Sheet. However, the Utilization Form for one DBE (H.S. Thompson) documenting the type of work and the committment [sic] by the bidder to use the DBE, was not included in the bid proposal... .
DOT followed this recommendation and determined that Asphalt's bid was nonresponsive.
On March 4, 1991, DOT posted a notice of intent to award the bid to the next lowest bidder, Weekley Asphalt Paving, Inc. Asphalt filed a Notice of Protest and a Formal Protest to DOT's decision to award the bid to the next lowest bidder, asserting that its bid was responsive in every manner, including the submission of all the necessary DBE certifications. Alternatively, it contended that if it had failed to submit the necessary DBE documents, this was harmless error since the information was provided on other bid documents and DOT had previously failed to adhere to the strict requirements of rules and statutes governing the submission of bid documents.
The matter went to an evidentiary hearing pursuant to section 120.57(1), Florida Statutes (1989). Mr. Dumas testified that he prepared the bid documents, attached the missing form to the bid packet, sealed it in an envelope and delivered it to DOT. There was no other direct evidence concerning what happened to the missing document. The hearing officer's recommended order, entered on May 10, 1991, concluded that DOT should enter a final order granting Asphalt's protest and awarding the project to Asphalt. Among other things, the hearing officer made factual findings that all DOT routine procedures were followed on the day that the bids were opened; that it is virtually impossible to determine precisely what happened to the H.S. Thompson utilization form in Asphalt's bid packet; and that "[t]he H.S. Thompson form was lost, and it is more likely this occurred after the packet was opened by FDOT than before it was sealed in the envelope by Jennings Clay Dumas." The hearing officer stated in the "conclusions of law" that "[b]oth direct and circumstantial *560 evidence support a finding that the bid did include the documentation at the time that it was presented to DOT, but that it was somehow detached and lost after opening"; that even though the rule requirement for the utilization form is "uncontestedly not material," DOT is bound by the rule until it is amended or superceded by subsequent legislation; and that because Asphalt had met its burden of proof that the DBE participation goal was met and did include the documentation to that effect, it was entitled to the contract as the lowest bidder.
On May 28, 1991, DOT entered a final order dismissing Asphalt's protest. The final order rejected the hearing officer's finding of fact that it was more likely the loss of the missing form occurred after the bid proposal packet was opened by DOT, reciting that this was not based on substantial, competent evidence, and that the facts in the record "constitute[] prima facie evidence that the documentation was not lost by the Department." The final order further recites that:
4. The standard of review for the Respondent's determination that the sheet was not in Petitioner's package is whether that determination was fraudulent, arbitrary, illegal or dishonest. [Department of Transportation v.] Groves-Watkins, 530 So.2d 912 (Fla. 1988). The facts in the instant case do not support a finding of [sic] that the agency acted fraudulently, arbitrarily, illegally or dishonestly. The Hearing Officer's conclusion, based on what she determined to be the credible testimony of the Respondent's employees, was that it was virtually impossible to determine what happened to the missing sheet (Finding of Fact Number 14).
Petitioner failed to establish by competent substantial evidence that it had complied with Florida Administrative Code Rule 14-78.003(2)(b)3., in that Asphalt Pavers failed to include a description of the work to be performed by DBE contractor H.S. Thompson. Nothing in the record demonstrates that the Department's action on determining Asphalt Pavers' bid to be nonresponsive was in any way arbitrary, fraudulent, illegal or dishonest. Department of Transportation v. Groves-Watkins Constructors, supra. In fact, no such finding or conclusion was made by the Hearing Officer. Put simply, Petitioner failed to carry its burden of proof.
Asphalt contends that DOT erred in substituting its conclusion for that of the hearing officer on the disputed factual issue of whether the H.S. Thompson utilization form was submitted with Asphalt's bid proposal and then lost by DOT because the hearing officer's findings of fact on this point are supported by competent, substantial evidence. DOT responds that the hearing officer's finding that the form was lost after Asphalt submitted its bid proposal was properly rejected because the finding of fact was not based upon competent, substantial evidence, but instead was based upon "either sheer speculation closely akin to a cerebral coin toss, or an event wholly unassociated with the bid letting at issue." Citing to the supreme court's decision in Department of Transportation v. Groves-Watkins Constructors, 530 So.2d 912 (Fla. 1988), and its progeny, DOT argues that the only issue to be decided is whether, in reaching its decision to reject Asphalt's bid and award the contract to Weekley, DOT acted fraudulently, arbitrarily, illegally, or dishonestly.
In its Grove-Watkins opinion, the supreme court clarified to some extent the relevant considerations to be made by the hearing officer and the agency in a bid protest proceeding. The court characterized the purpose of the public bidding requirement as "providing a means by which goods or services required by public authorities may be acquired at the lowest possible cost" and protecting "against collusion, favoritism, and fraud in the award of public contracts." 530 So.2d at 913. The court reaffirmed that the public bidding process is governed by the Florida Administrative Procedure Act, chapter 120, Florida Statutes. It emphasized that under section 120.57(1)(b)10 [formerly section 120.57(1)(b)9] the agency must accept the factual determinations of a hearing officer *561 unless those findings are not based upon competent, substantial evidence.[2] Harmonizing that provision with statutory provisions in chapter 337 governing public bidding, the supreme court concluded that:
Thus, although the APA provides the procedural mechanism for challenging an agency's decision to award or reject all bids, the scope of the inquiry is limited to whether the purpose of competitive bidding has been subverted. In short, the hearing officer's sole responsibility is to ascertain whether the agency acted fraudulently, arbitrarily, illegally, or dishonestly.
530 So.2d at 914. Although Grove-Watkins involved the agency's rejection of all bids, we conclude that these general principles apply with equal force in the instant bid protest proceeding.
This court has consistently recognized in administrative law cases governed by chapter 120 that:
Factual issues susceptible of ordinary methods of proof that are not infused with policy considerations are the prerogative of the hearing officer as the finder of fact. McDonald v. Department of Banking & Finance, 346 So.2d 569 (Fla. 1st DCA 1977). It is the hearing officer's function to consider all the evidence presented, resolve conflicts, judge credibility of witnesses, draw permissible inferences from the evidence, and reach ultimate findings of fact based on competent, substantial evidence. State Beverage Department v. Ernal, 115 So.2d 566 (Fla. 3d DCA 1959). If, as is often the case, the evidence presented supports two inconsistent findings, it is the hearing officer's role to decide the issue one way or the other. The agency may not reject the hearing officer's findings unless there is no competent, substantial evidence from which the finding could reasonably be inferred. The agency is not authorized to weigh the evidence presented, judge credibility of witnesses, or otherwise interpret the evidence to fit its desired ultimate conclusion.
Heifetz v. Department of Business Regulation, Division of Alcoholic Beverages & Tobacco, 475 So.2d 1277, 1281 (Fla. 1st DCA 1985). See also Forehand v. School Board of Washington County, 481 So.2d 953 (Fla. 1st DCA 1986).
Directing our attention to the record in this case, we conclude that competent, substantial evidence supports the hearing officer's finding of fact that the H.S. Thompson utilization form was submitted with Asphalt's bid proposal packet and then lost after Asphalt had delivered it to DOT. The individual who prepared Asphalt's bid proposal, Mr. Dumas, testified in detail without controversion that he prepared Asphalt's bid proposal using the original bid packet received from the DOT and that he completed a DBE summary form listing four DBE subcontractors, including H.S. Thompson, to be used during the construction of the project. In addition to listing the DBE subcontractors on the DBE summary form, the packet required that one DBE utilization form[3] be prepared for each subcontractor listed on the summary form. However, since the bid packet given to each contractor contained only one DBE utilization form (the last document in the bid packet), Mr. Dumas was required to add three additional utilization forms to the bid packet. To do this, Mr. Dumas removed the staples from the original bid packet by folding back the staples, copied and then added the additional forms to the back of the packet, and then folded the staples back down. Mr. Dumas specifically *562 remembered attaching the H.S. Thompson form, along with the other utilization forms, to Asphalt's bid proposal, because the H.S. Thompson form was the last document in Asphalt's bid proposal. On the day of the letting, Mr. Dumas personally placed the completed bid proposal, with the H.S. Thompson form attached, into an envelope. He then took the envelope to DOT, sealed the envelope when he arrived at DOT, and handed the envelope to a DOT representative. There was evidence that H.S. Thompson is an approved DBE subcontractor and that it provided a quote of $27,650 for the same item of work to Asphalt and to another contractor, Apac, Florida, Inc., whose bid submittal had the required form attached, and both contractors used the same amount for the H.S. Thompson subcontract.
The hearing officer found, consistent with the evidence, that on the morning of the letting, other than a half hour delay in the originally scheduled time for opening the bid proposals pending arrival of the Governor, routine procedures were followed by DOT employees in collecting, opening, checking, and handling the bid proposals. But, none of the DOT employees who handled, opened, stacked, or checked the bids specifically remembered opening Asphalt's bid proposal. Not until the staff for the Minority Programs were checking the bid proposals that afternoon was it discovered that the H.S. Thompson form was missing from Asphalt's bid proposal. When, after checking Asphalt's packet again, the staff failed to find the H.S. Thompson form, Asphalt's bid was computed without the H.S. Thompson subcontract amount and disqualified for failing to achieve a DBE participation rate of 10 percent.
The hearing officer recited that "[b]oth direct and circumstantial evidence support a finding that [Asphalt's] bid did include the documentation at the time it was presented to DOT, but that it was somehow detached and lost after opening." Based on the evidence before her, the hearing officer could not have found otherwise. Because this finding is supported by competent, substantial evidence in the record, DOT erred in rejecting it and substituting its own finding that the facts shown by the record constitute "prima facie evidence that the documentation was not lost by the Department." Heifetz, supra.
The hearing officer's recommended order did not address the applicability of the Grove-Watkins test to the facts of this case, but treated DOT's loss of the required form as a threshold issue that prevented DOT's rejection of Asphalt's bid for failing to meet DBE goals without applying the Grove-Watkins test. DOT's erroneous rejection of the hearing officer's findings of fact formed the predicate for its conclusion that it had not acted fraudulently, arbitrarily, illegally or dishonestly in rejecting Asphalt's bid. Since the loss of Asphalt's form is clearly the fault of DOT, for the agency to reject Asphalt's bid because it did not contain the lost document is clearly arbitrary within the meaning of the Grove-Watkins test, requiring reversal and remand for further proceedings consistent with this decision.
In view of this holding, we decline to reach the other arguments advanced by appellant.
REVERSED AND REMANDED.
MINER and WEBSTER, JJ., concur.
NOTES
[1] It was determined that after omitting the H.S. Thompson subcontract amount, the DBE goal achieved by Asphalt's bid was only 8.86%.
[2] Section 120.57(b)10, Florida Statutes (1989), provides in pertinent part:

... The agency in its final order may reject or modify the conclusions of law and interpretation of administrative rules in the recommended order, but may not reject or modify the findings of fact unless the agency first determines from a review of the complete record, and states with particularity in the order, that the findings of fact were not based upon competent substantial evidence or that the proceedings on which the findings were based did not comply with the essential requirements of law... .
[3] The utilization form lists the name, address, and telephone number of the DBE; a description of the work to be done; and the dollar amount to be paid. The form must be signed by the prime contractor, and may be signed by the subcontractor.