715 So.2d 1084 (1998)
MIAMI-DADE COUNTY, Appellant,
v.
CHURCH & TOWER, INC., Appellee.
No. 98-1576.
District Court of Appeal of Florida, Third District.
August 12, 1998.
*1085 Robert A. Ginsburg, County Attorney, and R.A. Cuevas and Hugo Benitez, Assistant County Attorneys, for appellant.
Adorno & Zeder and Raoul G. Cantero, III, Coconut Grove, and Jonathan D. Colan, Miami, for appellee.
Before SCHWARTZ, C.J., FLETCHER, J., and SMITH, LARRY G., Senior Judge.
SMITH, LARRY G., Senior Judge.
We have before us an appeal and a cross-appeal from a non-final order of the circuit court in litigation between Miami-Dade County ("Miami-Dade" or "county"), appellant/cross-appellee, and Church and Tower ("C & T"), appellee/cross-appellant.
C & T, as the lowest bidder for a competitively bid contract for road paving work to be awarded by the county, filed a bid protest challenging the recommendation of the county manager rejecting its bid because C & T was not a "responsible bidder." C & T also filed a complaint to prohibit the county from awarding the contract pending exhaustion of C & T's bid protest remedies. Relying solely on the order of a hearing examiner entered after a hearing pursuant to the county's bid protest ordinance, recommending award of the contract to C & T, the court granted a temporary injunction prohibiting the county from awarding the contract to any entity except C & T during pendency of appellate review of the Board of County Commissioners' adverse ruling on C & T's bid protest, and until further order of the court.[1] Subsequently, on the county's motion to dissolve after the Board accepted the county manager's recommendation and rejected C & T's bid, the court ordered that the injunction be dissolved based upon the court's finding that C & T had an adequate remedy at law. However, in the same order, the court granted C & T's ore tenus motion to stay the dissolution for a period of ninety days, reserving jurisdiction to further extend the stay on application of C & T.
The county timely appealed both the original order granting the temporary injunction and the order staying the dissolution. C & T cross-appealed the dissolution of the injunction.
On appeal, the county contends that the order by the lower court, though purporting to dissolve the injunction, by granting the stay of dissolution, in effect continued the temporary injunction. The county argues that C & T failed to establish entitlement to a temporary injunction prior to the board's decision, or a continuation of the injunction following the board's decision, in that the evidence before the court did not meet the standard required to overturn the decision of the Board of County Commissioners in the exercise of its discretion to accept or reject competitive bids for a public contract under the standards set forth in Department of Transportation v. Groves-Watkins Constructors, 530 So.2d 912 (Fla.1988), and Liberty County v. Baxter's Asphalt & Concrete, Inc., 421 So.2d 505 (Fla.1982). Accordingly, the county argues, C & T failed to establish a substantial likelihood of success on the merits *1086 of its bid dispute with the county, one of the essential elements required to sustain the temporary injunction.[2]
C & T maintains that the trial court did not err in staying dissolution of the injunction pending appellate review of the board's adverse ruling on C & T's bid protest. C & T further argues alternatively, on cross-appeal, that the trial court erred in dissolving the injunction. C & T argues that its position is supported by the decision in Wood-Hopkins Contracting Co. v. Roger J. Au & Son, Inc., 354 So.2d 446 (Fla. 1st DCA 1978), and other cases holding that in bid protest proceedings a court of equity may properly enjoin the award of a contract to allow completion of bid protest procedures by a disappointed bidder.
On the basis of the record before us and our review of the authorities cited, we agree with the county's position that the orders granting the temporary injunction and staying its dissolution were improperly entered and must be set aside.

I.
C & T was the prime contractor on a prior contract with the county for paving and striping work, when the county advertised for bids on additional similar work. C & T was the low bidder on two of the new proposed contracts. C & T's subcontractors on the prior contract were MBL, and H & J, and a third company, Thermoplastic, which performed work as a sub-subcontractor to MBL. The same contractors were listed on C & T's new bids as subcontractors to perform work under the new contracts. Because of problems that developed concerning the performance of the previous contract, disputes arose between the county and C & T which resulted in the county's cancellation of the contract in October 1997, litigation between the county and C & T, a State Attorney's investigation of the prior contract, and litigation between C & T and Thermoplastic in which C & T alleged, among other things, fraud and racketeering by Thermoplastic.
In April 1998, interim County Manager Merrett Stierheim, upon review of the bids for the new contracts pursuant to Sec. 2-8.3 of the Dade County Code (1995), recommended to the County Commission that C & T's bids be rejected on the ground that C & T was not a "responsible bidder." Reasons for the rejection included analyses and data obtained with respect to performance of the prior contract during the course of the pending litigation indicating that substantial amounts of paving and striping work billed and paid under the prior contract had not in fact been performed.

II.
C & T filed a bid protest pursuant to the County Code, and a hearing examiner was appointed to hear the protest under Sec. 2-8.4 (1995), "Bid Protest Procedures." After a three-day hearing, at which numerous witnesses testified and some 100 exhibits were introduced, the hearing examiner entered a written order containing his findings and recommendations. The hearing examiner did not concur in the decision of the county manager to reject C & T's bid, concluding that as to C & T, "all pertinent facts were not known by the County Manager in determining that Church & Tower was not a responsible bidder for this project." He recommended to the commission that the contracts be awarded to the low bidder, C & T.
The hearing examiner's findings and recommendation were filed with the commission on May 6, 1998, in accordance with Section 2-8.4(e) of the County Code, and a hearing before the commission was held on May 19, 1998. At the conclusion of the hearing the commission voted unanimously to reject C & T's protest, adopting a motion
that the protest be rejected on the grounds adequately supported by the records for underperformance by the contractor and *1087 given the fact that there is an ongoing criminal investigation it must be the policy of this commission not to award additional contracts to the same contractors for work under these circumstances.

III.
Before the court can order a temporary injunction, the complaining party generally must establish: (1) a likelihood of irreparable harm; (2) the unavailability of an adequate remedy at law; (3) a substantial likelihood of success on the merits; and (4) public interest considerations. See Naegele Outdoor Adver. Co. v. City of Jacksonville, 659 So.2d 1046, 1047 (Fla.1995); Smith Barney Shearson, Inc. v. Berman, 678 So.2d 376, 377 (Fla. 3d DCA 1996). The critical issue in this appeal concerns the burden which must be met by C & T in establishing a substantial likelihood of success in its challenge to the commission's decision rejecting C & T's bid protest.
In approaching this issue we first turn to provisions of the Dade County Code governing bid protest proceedings.[3] The County Code, Sec. 2-8.3, provides in part that in the competitive bidding process "the County Manager shall review the responses to the solicitation [for bids] and recommend to the County Commission award or other appropriate action." Sec. 2-8.4(c) provides, in part:
(c) Protests filed in accordance herewith shall be referred to a hearing examiner who shall hold a hearing and submit written findings and recommendations based thereon within ten (10) days of the filing of the protest. The hearing examiner shall consider the written protest and supporting documents and evidence appended thereto, the County Manager's recommendation, and supporting documentation, and all evidence presented at the hearing.
That section further provides, in subsection (e):
(e) The hearing examiner's findings and recommendation shall be presented to the Commission together with the recommendation of the County Manager.... The matter shall be resolved on the basis of the record before the hearing examiner and no evidence or issue which was not presented or raised at such hearing shall be considered.
Subsection (f) provides that if the hearing examiner concurs in the county manager's recommendation, a two-thirds vote of the commission is required to take action other than the manager's recommendation; however, if the hearing examiner does not concur in the manager's recommendation, "the Commission shall decide the matter by majority vote."
C & T contends that by adopting these ordinances which provide for review of the county manager's decision by a hearing examiner, who then makes recommendations to the commission, the commission has "delegated" its decision-making authority to the hearing examiner, and that the commission is bound by the hearing examiner's findings and recommendation if supported by competent substantial evidence. Thus, C & T concludes, the issue before this court is whether the hearing examiner's findingthat the county manager's rejection of C & T as "not responsible" was "arbitrary and capricious"was supported by competent substantial evidence. If so, C & T argues, the commission was not free to disregard the hearing examiner's decision and its action was therefore arbitrary and capricious. C & T urges that the commission's review is limited, thus similar in nature to an appeal.
We disagree with C & T's interpretation of the ordinance provisions and their application to the controversy before us. There is no specific language which can be reasonably interpreted as a "delegation" of the bid protest decision to the hearing examiner. In fact, the only specific direction as to the nature of the commission's review is found in the language of subsection (e): "The matter shall be resolved on the basis of the record before the hearing examiner and no evidence or issue which was not presented or raised at *1088 such hearing shall be considered." (emphasis added). There is no direction, contrary to the interpretation by C & T, that the commission's decision shall be based upon review of the hearing examiner's findings and recommendation.
C & T argues that the hearing examiner's findings and recommendation must be viewed as having binding effect on the commission; otherwise, it maintains, there would be no purpose in providing for a hearing before a hearing examiner and presentation of his findings and recommendations to the commission. Again, we disagree.[4] As the appellant points out, subsection (f) clearly spells out the effect of the hearing examiner's recommendation on the commission's decision: "If the hearing examiner concurs" in the manager's recommendation, a two-thirds vote is required to take other than the "recommended action;" however, "[i]f the hearing examiner does not concur in the County Manager's recommendation, the Commission shall decide the matter by majority vote." It is clear from the foregoing that the commission has reserved its authority to resolve bid protests, subject only to the requirement that it must do so by a two-thirds vote of those present to override a recommendation agreed upon by both the county manager and the hearing officer; otherwise, its decision shall simply be by majority vote. Thus, the county's position that the commission was not bound by the hearing examiner's recommendation in this instance has not been shown to be erroneous. See Metropolitan Dade County v. P.J. Birds, Inc., 654 So.2d 170, 175 (Fla. 3d DCA 1995) (court is obliged to defer to agency's interpretation of ordinance if reasonable).
The county's position is strengthened by reference to another provision of the bid protest procedure in which the commission's authority is specifically limited. Subsection (a) of the ordinance, entitled "Responsiveness," requires certification by the County Attorney, before a hearing on any protest, that the bid or proposal in question is "responsive." This subsection then provides: "This Board and any committee thereof shall be bound by the determination of the County Attorney with regard to the issue of responsiveness." (emphasis added). We can safely assume, we believe, that if it had been intended that the commission "shall be bound" by the findings and recommendation of the hearing examiner presented in accordance with subsection (e), the drafter of the ordinance would have so stated.[5]
Notwithstanding our disagreements with C & T's interpretation of the ordinance, we agree that where discretion is vested in a public agency for the award of contracts for public works on competitive bids, this discretion "`may not be exercised arbitrarily or capriciously but must be based on facts reasonably tending to support the conclusions reached by such agency.'" Wood-Hopkins Contracting Co., 354 So.2d at 450 (quoting City of Pensacola v. Kirby, 47 So.2d 533, 535-36 (Fla.1950)). In the seminal decision of Liberty County, the court explained the measure of discretion vested in a public agency in competitive bidding situations, stating:
In Florida ... a public body has wide discretion in soliciting and accepting bids for public improvements and its decision, when based on an honest exercise of this discretion, will not be overturned by a court even if it may appear erroneous and even if reasonable persons may disagree.
421 So.2d at 507.
The above language was quoted and approved by the court in Groves-Watkins, as *1089 indicative of the "strong judicial deference" accorded an agency's decisions with respect to competitively bid contracts, adding the following significant comments:
In Liberty County, we recognized the broad discretion legislatively accorded public agencies and held that an agency's decision based upon an honest exercise of this discretion cannot be overturned absent a finding of "illegality, fraud, oppression or misconduct." Liberty County thus established the standard by which an agency's decision on competitive bids for a public contract should be measured.
Groves-Watkins, 530 So.2d at 913 (citation omitted).
In the early case of Willis v. Hathaway, 95 Fla. 608, 117 So. 89 (1928), in speaking of the authority and duty of the state road department with respect to the selection of responsible bidders, the Florida Supreme Court said:
Certainly, the Legislature intended and did vest in the state road department the power, authority, and duty to determine not only from a standpoint of dollars and cents who should appear to be the lowest bidder, but also to determine from information available to and acquired by the state road department what bidder or bidders would be adjudged by the state road department to be responsible bidders for each particular contract sought to be awarded, and from such responsible bidders for such particular contract to then determine the lowest of such responsible bidders, and in determining the responsibility of the bidder it became and was the duty of the road department to ascertain the degree of experience, the reputation for performance, the possession of facilities, the outstanding obligations, the obligations then assumed or about to be assumed, the integrity and credit, as well as other matters which might touch and have influence upon the ability of each bidder to perform the contract for which he had placed a bid.
Id. at 626-27, 117 So. at 94. Quoting the foregoing language with approval, the court in Culpepper v. Moore, 40 So.2d 366 (Fla. 1949), further elaborated upon the agency's authority when considering the "lowest responsible bid," as follows:
That decision makes it plain that while the discretion vested in a public agency in respect to letting public contracts may not be exercised arbitrarily or capriciously, but that its judgments must be bottomed upon facts reasonably tending to support its conclusions, no mandatory obligation is imposed upon such an agency to consider the lowest dollars and cents bid as being the "lowest responsible bid" in every case, to the exclusion of all other pertinent factors which may well support a reasonable decision to award the contract to a contractor filing a higher bid. So long as such a public agency acts in good faith, even though they may reach a conclusion on facts upon which reasonable men may differ, the courts will not generally interfere with their judgment, even though the decision reached may appear to some persons to be erroneous.
Id. at 370.[6]
Considering the record and arguments before us in the light of the above standards, we conclude that while C & T's bid protest shows substantial disagreement with the action of the commission, it falls far short of a showing of arbitrary or capricious *1090 action, much less illegality, fraud, oppression or misconduct. See Groves-Watkins, 530 So.2d at 914; Liberty County, 421 So.2d at 507. Accordingly, we find that C & T failed to demonstrate a substantial likelihood of success in its challenge to the commission's decision, and the court below was in error in granting a temporary injunction. Further, since the stay of the dissolution of the injunction had the practical effect of continuing the injunction, the stay was improper and must also be set aside.[7]

IV.
Our decision regarding the correctness of the injunction would be no different even if we applied the standard of review urged by C & T. First, the hearing examiner made no credibility determinations, so that there were no factual findings which might be entitled to deference on the part of the commission. The reason for the rule, or at least one of the prime reasons binding a reviewing agency to factual findings by a hearing examiner in administrative proceedings is that the hearing examiner who has before him the witnesses whose demeanor and conduct may be observed, is in a better position to determine the truth of falsity of the evidence than is the reviewing body which must make such determination based on a typed transcript. See Huttoe, 38 So.2d at 820 (Fla.1949). Even a cursory review of the hearing examiner's three-page order reveals the absence of any basis for application of the standard of review urged by C & T. The hearing examiner's order recited, in part:
The County Manager filed his recommendation finding Church & Tower not to be a responsible bidder on April 1, 1998, having assumed office two weeks previously. Most of the issues arising from this dispute pre-dated the Manager's involvement by months and arose from a prior contract between the County and Church & Tower, designated as Contract W-755.
At the bid protest hearings the Manager testified that at the time he made his recommendation on April 1, 1998, he was unaware that in October, 1997, Church & Tower had offered to cure the alleged defects arising out of W-755 pursuant to the provisions contained in the General Covenants and Conditions of that contract. He further testified that he was unaware of the offers and attempts made by Church & Tower in October and November, 1997 to resolve all financial issues with the County and make the County whole. The County Manager conceded that these actions on the part of Church & Tower would have been consistent with the actions of a responsible contractor. It was also pointed out that Church & Tower had posted a performance bond of $57 million to insure performance under Contract W-755.
Following the above paragraphs, the order recites the rule of law to the effect that where discretion is vested in a public agency to award contracts on a competitive basis, the discretion may not be exercised arbitrarily or capriciously but must be based upon facts reasonably tending to support the conclusions reached by the agency, citing Marriott Corp. v. Metropolitan Dade County, 383 So.2d 662 (Fla. 3d DCA 1980). The next sentence reads: "Considering the foregoing, the Hearing Examiner concludes that, as to Church & Tower, all pertinent facts were not known by the County Manager in determining that Church & Tower was not a responsible bidder for this project."
With all respect, these so-called admissions by the county manager were irrelevant to the issue facing the commission, namely, whether the evidence before the hearing examiner revealed facts reasonably tending to support the existence of performance and billing irregularities on the part of C & T, or its subcontractors, or both, in the execution and supervision of the prior contract. C & T does not contend, nor could it reasonably do *1091 so on the record before us, that there was no such evidence. Instead, C & T points to evidence which, in its view, tends to explain or excuse the discrepancies complained of by the county. The hearing examiner, however, made no finding whatever as to the probative effect of the evidence for either side, but based his decision entirely upon his findings as to the county manager's lack of knowledge regarding C & T's efforts to resolve or cure the defects and problems associated with the prior contract some four to five months prior to his initial recommendation to reject C & T's bid.
In announcing his ruling at the hearing, the hearing examiner stated:
I don't want anybody to interpret from my conclusion that I've weighed any of the accusations and counteraccusations on their merits. I am weighing what I consider to be the law applied to bid protests and whether or not it fits into what I consider to be the law and common sense.
Again, at a later point, he emphasized, "I'm not ruling on the validity of any of the allegations," and "I don't intend to embellish these comments with all kinds of factual findings and things like that." True to his announced intention, in his written order the hearing examiner declined to resolve any of the accusations and counter-accusations on their merits, stating, in part in the first paragraph under the heading "Findings and Recommendations," the following:
As stated by the Hearing Examiner at the conclusion of the hearings, the bid protest proceeding is not the forum for a determination of the validity of accusations, denials of accusations, counter-accusations and denials of counter-accusations. In fact, at the time of the filing of the County Manager's recommendation, a law suit between Church & Tower and the County had been pending for several months. The law suit is presently pending in Circuit Court and centers upon issues involved in this bid protest proceeding. Several depositions taken in that suit were read into evidence during the bid protest hearings. Many-if not all-of these contested issues will eventually be determined at the trial stage by a Circuit Judge and/or a jury, and perhaps ultimately by an appellate tribunal.
These pronouncements by the hearing examiner and the language of his order provide ample basis for our conclusion that the commission's concurrence in the county manager's recommendation was not arbitrary and capricious. The hearing examiner's findings in no way purport to exonerate C & T with respect to the questionable performance and billing under the prior contract. To the contrary, the order itself confirms the existence of substantial problems that appeared to the hearing examiner to require, and in fact has required, the institution of separate litigation between C & T and the county.[8]

V. Conclusion
Finally, we observe that with any human activity, especially a large construction project involving a great contribution of labor, capital and material, a certain level of errors and omissions requiring adjustment or correction is highly likely to occur. At a certain level, these problems can be and usually are tolerated and satisfactorily managed by the parties. At another level, however, the difficulties and problems may reach such magnitude as to become intolerable, at which point the usual methods of negotiation and correction are no longer adequate to reconcile the issues. Exactly when that point arrives is a judgment call in every case, and it may occur sooner or later, depending upon whether the matter involves private activity and private parties or public agencies and public business. What we have considered here is essentially a judgment call by the Dade County Commission which has not been shown to be based upon anything other than an honest exercise of its discretion. We reject C & T's contention that the commission has delegated a decision of this nature, which on its face is infused with policy considerations, to the hearing examiner. Under such circumstances, the law is clear that its decision "will not be overturned by a court even if it may appear erroneous and even if *1092 reasonable persons may disagree." Liberty County, 421 So.2d at 507.
Accordingly, the order of the court below dissolving the temporary injunction prohibiting the county from proceeding with the award of the contracts in question is AFFIRMED, and the order staying the order of dissolution is REVERSED.[9]
NOTES
[1] We note that the order by its terms anticipated an adverse ruling by the Board of County Commissioners in that the injunction was issued on May 18, 1998, while the Board did not hold its hearing and vote on the bid protest until the following day, May 19, 1998.
[2] The county also argues that the dissolution of the injunction on the ground stated by the trial courtthe existence of an adequate remedy at lawwas correct. Because we agree with C & T's claim that a protesting bidder under the circumstances presented ordinarily has no adequate remedy at law, we focus our opinion on the issue of whether C & T established the requisite "substantial likelihood of success" element.
[3] There is no contention by either party that the Administrative Procedure Act, Chapter 120, Florida Statutes, applies to judicial review of decisions of the Dade County Commission in bid protest proceedings. See § 120.52(1)(c), Fla. Stat. (1997).
[4] The hearing provides a forum for the orderly presentation and reception of evidence and argument for and against the positions of the opposing parties, and other purposes, not the least of which would be to secure a favorable recommendation from the hearing examiner, and even to allow the protesting bidder an opportunity to convince the county manager to change his recommendation.
[5] City of Miami v. Huttoe, 38 So.2d 819 (Fla. 1949), City of Miami v. Houston, 102 So.2d 176 (Fla. 3d DCA 1958), and Metropolitan Dade County v. Bannister, 683 So.2d 130 (Fla. 3d DCA 1986), cited by C & T in support of its "delegation" argument, have only limited application to the issues before us. These cases involve the review of employee disciplinary actions under materially different ordinances and factual situations than are present here, and do not deal with the same legal interests and public policy considerations as are found in the award of competitively bid public contracts.
[6] The county, referring to the state attorney's investigation of the contract, urges that this factor alone has been held to be a sufficient basis for a finding of irresponsibility, citing Konski Engineers v. Levitt, 69 A.D.2d 940, 415 N.Y.S.2d 509 (1979), aff'd, 49 N.Y.2d 850, 427 N.Y.S.2d 796, 404 N.E.2d 1337 (1980), which involved a grand jury investigation. We find it unnecessary to determine this point. Cases cited by C & T indicate that the fact of an investigation is the beginning, not the end point in determining responsibility, see Hellenic Am. Neighborhood Action Comm. v. City of New York, 933 F.Supp. 286, 298 (S.D.N.Y.1996), rev'd on other grounds, 101 F.3d 877 (2d Cir.1996), cert dismissed, ___ U.S. ___, 118 S.Ct. 15, 138 L.Ed.2d 1048 (1997); that the decision must be based on the evidence underlying the investigation; and that the contractor must be given an opportunity to rebut the charges. See Transco Sec., Inc. of Ohio v. Freeman, 639 F.2d 318, 321, 324 (6th Cir.1981); Hellenic American, 933 F.Supp. at 297-98. Apparently, C & T concedes that the bid protest proceeding before the hearing examiner provides this opportunity.
[7] See Miami Heat Ltd. Partnership v. Leahy, 682 So.2d 198, 201 (Fla. 3d DCA 1996)(practical effect of order will be considered in determining appealability under Rule 9.130(a)(3)(B), Fla. R.App. P.). Further, in view of our conclusion that the dissolution of the injunction is sustainable due to C & T's failure to meet the substantial likelihood of success requirement, we affirm the dissolution. See Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150, 1152 (Fla. 1980)(even when based on erroneous reasoning, the decision of a trial court will be affirmed if the evidence or an alternative theory supports it).
[8] As noted earlier in this opinion, C & T found it necessary to charge one of its sub-subcontractors with fraud and racketeering in connection with the performance of the prior contract.
[9] This opinion shall take effect immediately without regard to the filing or determination of any motion for rehearing.