# Third District Court of Appeal

## State of Florida

Opinion filed February 13, 2019.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D18-2061
Lower Tribunal No. 17-335
_____

**Biscayne Marine Partners LLC,**
Petitioner,

vs.

**City of Miami, Florida and Virginia Key, LLC,**
Respondents.

On Petition for Writ of Certiorari from the Circuit Court for Miami-Dade County, Appellate Division, John W. Thornton, Jr., Mavel Ruiz and Marcia Del Rey, Judges.

Holland & Knight LLP, and Rodolfo Sorondo, Jr., Ilene L. Pabian and Daniel P. Hanlon, for petitioner.

Victoria Méndez, City Attorney, and John A. Greco, Deputy City Attorney; Bilzin Sumberg Baena Price & Axelrod LLP, and Albert E. Dotson, Jr., Eileen Ball Mehta, Eric Singer and Elise Holtzman Gerson, for respondents.

Before LOGUE, SCALES and LINDSEY, JJ.

SCALES, J.

Petitioner Biscayne Marine Partners LLC ("Biscayne Marine") bid unsuccessfully on a solicitation issued by Respondent City of Miami (the "City"). The City had sought proposals for the redevelopment and lease of waterfront property at Virginia Key. When the City Manager recommended that the City Commission award a competing bid, Biscayne Marine filed a timely bid protest. An administrative hearing officer affirmed the recommendation to award the bid to Biscayne Marine's competitor, Virginia Key, LLC ("VKLLC"). Biscayne Marine filed a petition for a writ of certiorari in the appellate division of the Miami-Dade County Circuit Court. After the Circuit Court denied Biscayne Marine's petition, Biscayne Marine sought second-tier certiorari review in this Court. For the reasons stated below, we deny Biscayne Marine's petition.

**I. History**

*A. City's Request For Proposals ("RFP")*

On February 17, 2017, the City issued RFP No. 16-17-011 seeking proposals for the redevelopment and long-term lease of approximately 26.65 acres of waterfront property (the "Property") at Virginia Key, which is located in Miami, Florida. During the bidding process, the City issued five addenda to the RFP. The City anticipated that the winning bidder would redevelop and lease the Property, and then operate a marina, a boatyard, wet slips, a dry storage facility and a restaurant on the site.

The RFP described the Property as consisting of three parcels. On a boundary survey contained as an exhibit to the RFP, and as appended to this opinion as an exhibit, a rectangular portion of Parcel 3 is labeled "NOT A PART." This rectangular portion has dimensions of approximately 51 feet by 441 feet. It is owned by the City. Abutting it to the south and located within the right-of-way of the Rickenbacker Causeway is a second, separate rectangular parcel owned by Miami-Dade County (the "County Land"). At the time of the issuance of the RFP, the County Land had been deeded by the County to the City for the purpose of constructing a parking garage. Initially, bidders had the option to use this County Land in order to provide required parking. On May 5, 2017, however, during the RFP process, the County advised the City that it would exercise a right of reverter for the County Land in order to expand the Rickenbacker Causeway. Accordingly, the City issued Addendum 5 to the RFP in which the City removed the County Land from the portion of the Property anticipated for parking use.[1]

---

[1] There appears to be confusion whether the County Land was included within the portion of Parcel 3 labeled "NOT A PART." The City emphatically maintains that the County Land is separate from the City's NOT A PART rectangle. Both the opinion of the Circuit Court and the certiorari petition to this Court identify the County Land as included in the NOT A PART rectangle. Paragraph 11 of the RFP also suggests the same: "A municipal parking garage is intended to be built outside the Property in the area labeled on the survey as 'NOT A PART.'" The City subsequently deleted this sentence in Addendum 5, and specified that the winning bidder would have to provide parking within the footprint of the Property. The precise location of the County Land is not particularly relevant to our decision.

On May 24, 2017, the City received the proposals of three bidders, Biscayne Marine, VKLLC and GCM Contracting Solutions, Inc. All three bidders made some degree of use of the NOT A PART rectangle. VKLLC used the NOT A PART rectangle to propose 111 dry storage slips. Biscayne Marine used the NOT A PART rectangle for vehicular access and circulation (and, apparently, to take advantage of existing parking). GCM used it partially for boat storage and partially for parking. Clearly, of the three bids, VKLLC's proposed use would make the most significant impact on the NOT A PART rectangle.

On June 15, 2017, the City Manager, based on rankings of the City's Evaluation Committee, issued a recommendation to the City Commission to award the bid to top-ranked VKLLC. On June 27, 2017, Biscayne Marine filed a formal bid protest with the City. In pertinent part, Biscayne Marine's bid protest maintained that VKLLC's bid was non-responsive because, in proposing to use the NOT A PART rectangle for dry storage slips, VKLLC proposed a commercial development purpose that was outside of the project's defined boundaries, and thus, constituted a material deviation from the RFP.[2]

*B. The Decision of the Hearing Officer*

---

[2] Biscayne Marine's bid protest also raised several issues related to the financial viability of VKLLC's bid. The record discloses that VKLLC intervened in the bid protest proceedings and alleged that Biscayne Marine's bid was non-responsive, and therefore, that Biscayne Marine lacked standing to prosecute its bid protest. None of these issues is before us in the instant petition for writ of certiorari.

On July 20, 2017, a City-appointed hearing officer heard Biscayne Marine's bid protest and, on August 8, 2017, entered an order denying the bid protest and affirming the recommendation of the City Manager to award the bid to VKLLC.

Finding that all three bidders had proposed a use for the NOT A PART rectangle in their bids, the hearing officer declined to weigh the relative merits of the different types of proposed uses. He accepted the City's view that the RFP had not prohibited the use of the NOT A PART rectangle.[3] The Hearing Officer noted that Addendum 5, which the City issued after the County removed the County Land from the RFP process, did not clarify the meaning of the NOT A PART label. After Addendum 5, which altered the development area of the RFP to exclude the County Land, the NOT A PART rectangle remained subject to different interpretations. Nevertheless, the Hearing Officer deferred to the City's "reasonable" interpretation of a surveyor's notation. The Hearing Officer went on to find, as follows:

> Giving the argument of counsel for Biscayne Marine as much deference, latitude and credibility that can be given, but I must still, as a matter of law defer to the judgment of the City in determining certain crucial factors. One of these factors relates to materiality. If

---

[3] The City employee who managed the RFP process testified that "NOT A PART" was a surveyor's notation that meant the rectangle was not a part of the survey. Accordingly, she testified, the NOT A PART rectangle was available for use in an RFP response. Indeed, all bidders proposed using the NOT A PART rectangle, and the City deemed none of the RFP responses to be non-responsive. The Hearing Officer found that each bidder benefited from its own interpretation and each was treated equally by the City.

the use of the NOT A PART parcel was not allowed, then the City had the ability to determine whether that made a difference to the outcome and whether the deviation was material.

*C. The Circuit Court's First-Tier Certiorari Review*

Biscayne Marine challenged the Hearing Officer's order by timely filing a petition for a writ of certiorari with the Miami-Dade County Circuit Court's Appellate Division. On September 11, 2018, the Circuit Court rendered a detailed, fourteen-page opinion denying Biscayne Marine's petition. The Circuit Court found that the Hearing Officer afforded the parties due process, did not depart from the essential requirements of law, and based his factual findings on competent substantial evidence.

Specifically, the Circuit Court observed, as the Hearing Officer had done, that the NOT A PART parcel meant different things to the City, Biscayne Marine and VKLLC. It held that the Hearing Officer was correct in deferring to the City's interpretation of the NOT A PART label appearing on the RFP's survey. It held that "[s]uch deference to the City's interpretation of the [NOT A PART] parcel does not constitute a departure from the essential requirements of law." In support of its deference to the City's interpretation, the Circuit Court found that the City's "interpretation does not demonstrate discrimination between bidders, nor does it present a fatal lack of specificity or an impermissible alteration of a material provision required by the RFP."

6

The Circuit Court also affirmed the Hearing Officer's deference to the City's analysis of the competing proposals and the resulting determination (via the City's Evaluation Committee) that both Biscayne Marine and VKLLC's proposals were responsive in that each used the NOT A PART parcel in their respective bids. To support its conclusions in this regard, the Circuit Court cited to Florida's policy of deferring to governmental decisions in competitive bidding situations when, as here, there is no "finding of illegality, fraud, oppression, or misconduct," citing to <u>Department of Transportation v. Groves-Watkins Constructors</u>, 530 So. 2d 912, 913 (Fla. 1988).

*D. Biscayne Marine's Argument on Second-Tier Certiorari Review*

Biscayne Marine then filed its petition with this Court seeking second-tier certiorari review of the Circuit Court's decision. Biscayne Marine's petition presents a narrow issue regarding the deference that both the Hearing Officer and the Circuit Court afforded to the City. Essentially Biscayne Marine asserts that, rather than deferring to the City as to whether VKLLC's bid constituted a material deviation from the RFP, the Hearing Officer and the Circuit Court should have made their own, independent determinations on this issue, and their failure to conduct such an independent inquiry resulted in a departure from the essential requirements of law.

**II. Analysis**

7

Our review on second-tier certiorari is extremely limited. We address only whether the decision of the Circuit Court departed from the essential requirements of law resulting in a miscarriage of justice; and specifically, whether the Circuit Court applied the correct law and afforded the parties procedural due process. Custer Med. Ctr. v. United Auto. Ins. Co., 62 So. 3d 1086, 1092 (Fla. 2010) ("[A] district court should exercise its discretion to grant review only when the lower tribunal has violated a clearly established principle of law resulting in a miscarriage of justice."); DMB Inv. Tr. v. Islamorada Vill. Of Islands, 225 So. 3d 312, 316 (Fla. 3d DCA 2017).

Hence, we restrict our inquiry to precisely what "clearly established principle of law" the Circuit Court allegedly violated. Biscayne Marine asserts that the Hearing Officer and the Circuit Court were required to undertake an independent review of whether, in its bid response, VKLLC's proposed commercial use of the NOT A PART rectangle constituted a material deviation from the City's bid specifications. Therefore, Biscayne Marine asserts, the "clearly established principle of law" is that, for a bid protest, either a court or a hearing officer must perform an analysis – independent of the public procuring agency – of whether a material deviation from bid specifications has occurred.[4]

---

[4] A public agency may not accept a bid that materially deviates from the agency's RFP specifications. Air Support Servs. Int'l, Inc. v. Metro. Dade Cty., 614 So. 2d 583, 584 (Fla. 3d DCA 1993).

To support this assertion, Biscayne Marine cites several cases[5] that, Biscayne Marine argues, articulate a principle of law forbidding courts or hearing officers from deferring to the procuring agency the question of whether a bid response materially varies from the procurement document.

Our reading of these cases, however, reveals no such holding, much less the articulation of such a deference prohibition as an established principle of law. Indeed, in one of the cases cited by Biscayne Marine, our Florida Supreme Court describes a public agency's discretion – as well as a court's role – in awarding public bids: "In Florida . . . a public body has wide discretion in soliciting and accepting bids for public improvements and its decision, when based on an honest exercise of this discretion, will not be overturned by a court even if it may appear erroneous and even if reasonable persons may disagree." Liberty Cty., 421 So. 2d at 507.

The holding of the Liberty County case – as with the other four cases cited by Biscayne Marine, see *supra* – does not focus on the role of the trial court in reviewing the bid. Consequently, no principle of law is clearly established in these cases as to any obligation of the trial court (and, by analogy, an administrative

---

[5]Liberty Cty. v. Baxter's Asphalt & Concrete, Inc., 421 So. 2d 505, 507 (Fla. 1982); Air Support Servs. Int'l, Inc. v. Metro. Dade Cty., 614 So. 2d 583, 584 (Fla. 3d DCA 1993); Robinson Elec. Co., Inc. v. Dade Cty., 417 So. 2d 1032, 1034 (Fla. 3d DCA 1982); Glatstein v. City of Miami, 399 So. 2d 1005, 1008 (Fla. 3d DCA 1981); and Harry Pepper & Assocs. v. City of Cape Coral, 352 So. 2d 1190, 1192-93 (Fla. 2d DCA 1977).

hearing officer) to decide or to defer. If anything, the existing and clearly established principle of law inclines toward judicial deference in public agency competitive bidding disputes when the agency has exercised it discretion absent illegality, fraud, oppression or misconduct. Groves-Watkins Constructors, 530 So. 2d at 913.

Because Biscayne Marine has failed to show that the Circuit Court departed from the essential requirements of law, we deny Biscayne Marine's petition for second-tier certiorari.

Petition denied.

# EXHIBIT



# BOUNDARY SURVEY

**BISCAYNE BAY**

**RICKENBACKER CAUSEWAY (CRANDON BOULEVARD)**

PARCEL 1

PARCEL 2 (ACCESS ROAD)

PARCEL 3

NOT A PART (RUSTY PELICAN LEASE AREA)

NOT A PART

GRAPHIC SCALE
SCALE : 1" = 100'

**BOUNDARY SURVEY**
of
3301, 3311, 3501, 3511 & 3605 RICKENBACKER CAUSEWAY,
VIRGINIA KEY, MIAMI-DADE COUNTY, FL 33149
for
CITY OF MIAMI

**J. Bonfill & Associates, Inc.**
REGISTERED LAND SURVEYORS & MAPPERS
Florida Certificate of Authorization LB3396
7190 S.W. 99th Avenue Suite 104
Miami, Florida 33173 (305) 598-6363

12

A388